UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL S. KAUFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:06-CV-2192-G |
| S&A RESTAURANT CORPORATION, ) | |
| ET AL., ) | **ECF** |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court is the motion of the defendants S&A Restaurant Corporation, Metromedia Steakhouses Company, L.P., Metromedia Restaurant Services, Inc., and Metromedia Company ("the defendants" or "Metromedia") to dismiss for lack of subject matter jurisdiction. For the reasons set forth below, the motion is denied.

I. BACKGROUND

The plaintiff, Michael S. Kaufman ("Kaufman" or "the plaintiff"), filed suit on November 29, 2006, asserting claims for breach of contract and denial of benefits under the defendants' equity growth plan. *See generally* Plaintiff's First Amended

Complaint ("Complaint"). Kaufman alleged that jurisdiction is proper under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a)(1), (e), and (f), and that the court has supplemental jurisdiction over Kaufman's state causes of action under 28 U.S.C. § 1367. Complaint ¶ 1.

The defendants, although previously admitting the court had subject matter jurisdiction in their answer,[1] now assert that the court lacks subject matter jurisdiction because the benefits plan at issue is, in fact, a "bonus plan, specifically exempted from ERISA coverage." *See* Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion to Dismiss") at 2. Additionally, the defendants argue that there is not complete diversity between the parties.[2] *See generally* Motion to Dismiss.

A. <u>Kaufman's Participation in the Metromedia Equity Growth Plan</u>

From September of 1993 until his termination in September of 2003, the plaintiff was employed as the President of Metromedia's restaurant group ("MRG"), which includes several well-known national restaurant brands. Complaint ¶¶ 10, 12, 28. In January of 1996, MRG established the Metromedia Restaurant Group Equity Growth Plan (the "Plan"). *Id*. ¶ 13. Each participant, or "member," was awarded a

---

[1] *See* Defendants' Answer to Plaintiff's First Amended Complaint ("Defendants' Answer") ¶ 1.

[2] Because the court finds that it has subject matter jurisdiction, the issue of diversity jurisdiction need not be addressed.

particular number of points, as determined by the Plan's administration committee. *Id.* The value of the points was to be determined using a defined formula, with the value being closely tied to the performance of the company. *Id.*

Kaufman distributed a brochure outlining the Plan (the "Plan Brochure") to participating colleagues in January of 1996. *Id.* ¶ 14. The Plan Brochure included a section entitled "Your Rights Under ERISA," which explained that each Plan participant was afforded certain rights and protections under ERISA, including, *inter alia*: (1) the right to examine and obtain copies of all Plan documents at the Plan Administrator's office; (2) protection from discrimination in obtaining the benefits of the Plan; (3) the right to a written explanation from the Plan Administrator for any partial or total denial of benefits under the Plan; and (4) the right to have the Plan Administrator review and reconsider a claim. *See* MRG Equity Growth Plan Brochure, *attached to* Complaint *as* Exhibit A at 11.

On February 6, 1997, the Plan's Administration Committee selected Kaufman to be a plan participant and awarded him 45,000 points, effected retroactively as of January 31, 1993, which became vested on October 15, 1998. Complaint ¶ 17; MRG Equity Growth Plan Points Certificate, *attached to* Complaint *as* Exhibit B. Kaufman then assigned 10,000 points to other members of the management team. *Id.* ¶ 19.

The Plan, as amended in June of 2002, provided that a member shall redeem all vested points upon the earliest occurrence of termination of employment, death,

total disability, termination of the Plan, or an "event of Hardship" to the extent "necessary to satisfy [the] Member's Hardship." *See* Amended Plan, *attached to* Complaint *as* Exhibit C ("Amendments") ¶ 7. Additionally, the Amendments provided that a plan participant could redeem up to 40% of his or her unredeemed points once every two years. *Id.* The Amendments simplified the valuation formula for the points, and tied that valuation to the last day of each fiscal quarter of the company. *Id.*; Complaint ¶ 23.

The Amendments also addressed the authority of the Plan's administrative committee, empowering it to select participating employees and to determine when and how many points are to be awarded. Complaint ¶ 25. The amendments granted the administrative committee the "final authority to interpret and construe the terms of the Plan." *See* Amendments ¶ 12. The committee's interpretation and construction "shall be final, binding, and conclusive upon all persons." *Id.* The amended Plan, contrary to the Plan Brochure, did not provide plan participants with an appeal procedure or any method of challenging the committee's determinations. Complaint ¶ 26.

Kaufman received a statement from MRG's Chief Financial Officer ("CFO") in August of 2003 which set forth a valuation of $27.60 as of the second quarter, and further stated that as of the second quarter, Kaufman had "35,000 equity plan points

with a vesting rate of 100%." *See* Caldwell Memorandum, *attached to* Complaint *as* Exhibit D; Complaint ¶ 27.

### B. Kaufman's Termination and Attempted Point Redemption

Kaufman was terminated on or about September 2, 2003. Complaint ¶ 28. On September 8, 2003, Kaufman had the first of many meetings with Metromedia's Executive Vice President, Stuart Subotnick ("Subotnick"), to negotiate the terms of Kaufman's severance. Complaint ¶¶ 29-54. MRG's general counsel, David Persing ("Persing") was also involved in the negotiation of Kaufman's severance package. *Id.* Initially, Subotnick, Persing, and Kaufman orally agreed that Kaufman would be able to redeem his equity points at the rate of $27.60 per point. Complaint ¶¶ 29, 30. Kaufman made a formal request for the redemption of his points on September 28, 2003. *See* Complaint *at* Exhibit E.

However, Metromedia continued to delay the redemption of Kaufman's equity points, citing the arrival of a new CFO, Robin Chamberlain ("Chamberlain"), and informing Kaufman that the calculation under the Plan formula was under review. *Id.* ¶¶ 39-40. The parties continued to negotiate issues related to Kaufman's separation from the company, and in February of 2006, Metromedia's CFO conducted an analysis of the Plan's valuation as of the second quarter of 2003. *Id*. ¶ 49. This analysis adjusted the value of the Plan's equity points as of the second quarter of 2003 to $0.00. *Id.*

After months of negotiations and a court-ordered mediation, the parties are still at odds over what is owed to Kaufman under the Plan. Kaufman alleges wrongful denial of benefits under ERISA, as well as breach of contract under the Plan. Complaint ¶¶ 57-66. The court now turns to the question of subject matter jurisdiction, raised by the defendants in their motion to dismiss.

## II. ANALYSIS

### A. Subject Matter Jurisdiction

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes the dismissal of a case for lack of jurisdiction over the subject matter. *See* FED. R. CIV. P. 12(b)(1). A motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction must be considered by the court before any other challenge because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal citation omitted); see also *Ruhrgas AG v. Marathon Oil Company*, 526 U.S. 574, 577 (1999) ("The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception") (citation and internal quotation marks omitted). On a Rule 12(b)(1) motion, which "concerns the court's 'very power to hear the case . . . [,] the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *MDPhysicians & Associates, Inc. v. State Board of Insurance*, 957 F.2d 178, 181 (5th Cir.) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir.), *cert. denied*,

454 U.S. 897 (1981)), *cert. denied*, 506 U.S. 861 (1992).  In ruling on a motion to dismiss under Rule 12(b)(1), the court may rely on:  "1) the complaint alone; 2) the complaint supplemented by undisputed facts; or 3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts." *MCG, Inc. v. Great Western Energy Corporation*, 896 F.2d 170, 176 (5th Cir. 1990) (citing *Williamson*, 645 F.2d at 413).

Furthermore, the United States Court of Appeals for the Fifth Circuit has held that if the same "statute provides both the basis of federal court subject matter jurisdiction and the cause of action," as in this case, and if the jurisdictional inquiry is so "intertwined with the merits" that it cannot be separately addressed, "the district court should find that it has subject matter jurisdiction over the case and deal with the defendant's challenge as an attack on the merits."  *Clark v. Tarrant County, Texas*, 798 F.2d 736, 741-42 (5th Cir. 1986); *Williamson*, 645 F.2d at 415.[3]

Here, the plaintiff argues, and the court agrees, that under *Clark* the defendants' Rule 12(b)(1) motion is more accurately construed as a motion to dismiss for failure to state a claim.[4]  The defendants dispute whether the Plan is subject to

---

[3] Additionally, the court must find (as it does here) that the plaintiff's federal claim is neither immaterial, insubstantial, frivolous, nor made solely for the purpose of obtaining jurisdiction.  *Clark*, 798 F.2d at 742 (citing *Bell v. Hood*, 327 U.S. 678, 682-84 (1946); *Williamson*, 645 F.2d at 415).

[4] Kaufman contends that the defendants' motion is improperly styled -- that instead of a motion to dismiss for lack of subject matter jurisdiction, the
(continued...)

ERISA, insisting that if the Plan is *not* an ERISA plan, the court lacks subject matter jurisdiction.[5] In such a situation, it is appropriate for a district court to resolve the motion to dismiss under Rule 12(b)(6) or, "after proper conversion into a motion for summary judgment, under Rule 56." *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1159 (10th Cir. 1999). "This refusal to treat indirect attacks on the merits as Rule 12(b)(1) motions provides, moreover, a greater level of protection to the plaintiff who in truth is facing a challenge to the validity of his claim." *Montez v. Department of the Navy*, 392 F.3d 147, 150 (5th Cir. 2004) (quoting *Williamson*, 645 F.2d at 415).

The defendants have asked the court to consider a host of exhibits to resolve their Rule 12(b)(1) motion to dismiss, several of which were not included in the

---

[4](...continued)
defendants' motion is substantive, and that because Kaufman's claims "aris[e] under" a law of the United States, the court has original jurisdiction under 28 U.S.C. § 1331. *See* Plaintiff's Response to Defendants' Motion for Summary Judgment, Styled as a "Motion to Dismiss for Lack of Subject Matter Jurisdiction" ("Plaintiff's Response") at 2.

[5] Curiously, Metromedia relies on *Murphy v. Inexco Oil Company*, 611 F.2d 570 (5th Cir. 1980), to support its motion to dismiss for lack of subject matter jurisdiction. *See* Motion to Dismiss at 6-7. However, the language relied on from *Murphy* involves the court's analysis of whether the disputed plan was governed by ERISA -- not whether the district court had subject matter jurisdiction. *Murphy*, 611 F.2d at 574. The court in *Murphy* recognized that "[f]ederal question jurisdiction is predicated upon the assertion of a claim arising under the constitution or laws of the United States." *Id.* at 573. The court found that "[h]ere jurisdiction was invoked on the basis that the case involved a federal question [under ERISA, and because the plaintiff's] assertions were not frivolous, the district court had subject matter jurisdiction." *Id.*

plaintiff's complaint. Because the merits of the plaintiff's claims are intertwined with the jurisdictional inquiry, and because the court has been asked to rely on evidentiary material submitted by the parties, the defendants' motion to dismiss will be viewed as one for summary judgment. FED. R. CIV. P. 12(d); *Williamson*, 645 F.2d at 415-16. The motion is, therefore, governed by the Rule 56 standard.

### B. Legal Standard for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving parties are entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986). While all of the evidence must be viewed in a light most favorable to the nonmovant, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovant's summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). A genuine issue of material fact exists "if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The movants make the necessary showing by informing the court of the basis of their motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex*, 477 U.S. at 323. The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

If the movants make the required showing, the nonmovant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovant cannot survive a motion for summary judgment, however, by merely resting on the allegations in his pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities,*

*Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

## C. Is the Plan Governed by ERISA?

*Pension Plan or Exempt Bonus Plan?*

The plaintiff seeks relief under 29 U.S.C. § 1132(a)(1)(B), which empowers "a participant or beneficiary" of an ERISA plan to bring a civil action "to recover benefits due to him under the terms of his plan." A "plan" is defined as "an employee welfare benefit plan or an employee pension benefit plan or a plan which is both." 29 U.S.C. § 1002(3). Kaufman argues the MRG's Plan is an employee pension benefit plan, defined by ERISA as:

> "any plan . . . established or maintained by an employer . . . that by its express terms or as a result of surrounding circumstances . . . (1) provides retirement income to employees; or (2) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond."

29 U.S.C. § 1002(2)(A). Notably, certain employee benefit plans -- classified as "bonus plans" -- have been exempted from ERISA coverage by Department of Labor regulations. *See* 29 C.F.R. § 2510.3-2(c). Under these regulations, "the terms 'employee pension benefit plan' and 'pension plan' shall not include payments made by an employer to some or all of its employees as bonuses for work performed, unless such payments are systematically deferred to the termination of covered employment

or beyond, or so as to provide retirement income to employees."[6] *Id.* Kaufman asserts that the Plan is an employee pension benefit plan under 29 U.S.C. § 1002(2)(A), arguing that the plan by its "express terms and surrounding circumstances . . . systematically defers payments to the end of employment." Response at 13, 16-25. Kaufman also contends that it is an "established fact that the Plan is an employee benefit plan subject to ERISA." *See* Response at 3.[7] The defendants, on the other hand, view the plan as a "phantom stock plan," specifically exempted from ERISA coverage as a "bonus plan" by administrative regulations. *See* Motion to Dismiss at 3, 8.

Kaufman presents numerous facts to support his position that MRG's Plan falls within the purview of ERISA. Kaufman begins by referring to the Plan Brochure and the letter he distributed to potential plan participants, emphasizing that the Plan

---

[6] The defendants, misreading the two exceptions found in 29 C.F.R. § 2510.3-2(a), incorrectly assert that the Fifth Circuit Court of Appeals, in *Murphy*, "held that employee bonus plans are not covered by ERISA." Motion to Dismiss at 8 (citing *Murphy*, 611 F.2d at 572-75).

[7] The plaintiff argues that under Rule 36(b) of the Federal Rules of Civil Procedure, the defendants have admitted the Plan is governed by ERISA, and therefore are now precluded from arguing the contrary. *See* Defendants' Answer ¶ 1 (admitting that jurisdiction is proper in this court under ERISA). However, the court finds that through their motion to dismiss, the defendants have effectively withdrawn their admission. FED. R. CIV. P. 36(b); *American Automobile Association, Inc. v. AAA Legal Clinic of Jefferson Crooke, P.C.*, 930 F.2d 1117, 1119 (5th Cir. 1991) (recognizing the district court's "considerable discretion over whether to permit withdrawal or amendment of admissions," so long as the decision serves the merits of the case and does not prejudice the party that originally obtained the admissions).

was designed to foster "long-term" commitment to MRG's performance, and that the Plan was established to give management a "stake in the growth of MRG and its future financial success."[8]  Response at 3-4.  Additionally, Kaufman circulated a memo to prospective participants where he expressed that the Plan would be a way to create a "nest egg" through working at MRG.  *See* Declaration of Michael S. Kaufman in Support of his Motion Response to Defendants' Motion to Dismiss for Lack of subject Matter Jurisdiction ("Kaufman Declaration") ¶ 6, *attached to* Plaintiff's Appendix *as* Exhibit A.  Kaufman notes that the Plan summary included a section entitled "Your Rights Under ERISA."  Response at 5.  However, under the Plan as amended in June of 2002, there is no mention of plan participants' rights under ERISA.  Kaufman also points to discussions between MRG and Metromedia regarding the creation of the Plan, noting that those involved in the process discussed the applicability of certain ERISA provisions.  *See* Response ¶¶ 4-5.

As additional evidence that the Plan is governed by ERISA (and not an exempt "bonus" plan), Kaufman notes that MRG offered certain employees annual incentive bonus plans.  Response at 6.  Kaufman also notes that redemption of equity points under the Plan was "rare."  *Id.* at 7.  These facts, however, have little impact on the

---

[8] The stated purpose of the Plan, as set forth in the June 2002 amendments, is "to further the long-term growth in the equity value of [Metromedia] by providing an incentive to selected key employees who are largely responsible for such growth, and to recognize their efforts on behalf of the Company."  *See* Amendments ¶ 1.

analysis. That MRG offered other bonus plans does not, by process of elimination, render the MRG Equity Growth Plan an ERISA plan. See *International Paper Company v. Suwyn*, 978 F.Supp. 506 (S.D. N.Y. 1997) (considering the application of ERISA to three separate incentive plans). Kaufman's point that few employees elected to redeem a portion of their points also does not have any bearing on the applicability of ERISA; it is the plan's stated intent and structure that are relevant.

The Fifth Circuit Court of Appeals, in *Murphy v. Inexco Oil Company*, addressed whether an assigned royalty interest in an oil drilling prospect, paid annually to selected employees, was in fact an ERISA plan. 611 F.2d at 572-73. The court, discussing the plan in dicta for the benefit of the district court on remand, concluded that although payment may occur after employment ends, the "primary thrust of the plan is to reward employees during their active years." *Id.* at 574. The court commented that though 29 C.F.R. § 2510.3-2(c) "does interpret ERISA as applicable to some bonus plans," the bonus plan at issue "provides for benefits to be paid immediately . . . not for their deferment in any fashion, systematic or otherwise." *Id.* at 575.

In *Hahn v. National Westminster Bank*, 99 F.Supp. 2d 275 (E.D. N.Y. 2000), the court held that a plan similar to MRG's Plan was not an "employee pension plan" within the meaning of ERISA. The plaintiffs in *Hahn* sought to enforce their rights under their former employer's "Phantom Stock Plan." *Id.* at 276. In reaching its

decision, the court focused on the stated purpose of the plan, the plan's administration via "phantom stock" issued to certain high-ranking eligible employees, the stock's valuation, and the method of redemption. *Id.* at 277. Citing with approval a line of cases emphasizing a plan's stated intent, the court explained that "it is clear that the [plan] was created to provide additional compensation to current employees in recognition of their value to [the company]." *Id.* at 279-80. The court then determined that neither of the two exceptions under 29 C.F.R. § 2510.3-2(c) applied, noting that "[t]he mere fact that payments made pursuant to a plan continue after retirement does not transform an otherwise excluded bonus plan into one whose payments are 'systematically deferred' to the termination of employment." *Id*. at 279 (citing *Murphy*, 611 F.2d at 575). However, in *Hahn*, plan participants had the option to cash in their "phantom stock" in full at any time after the three-year vesting period, which rendered the "systematic deferral" provisions inapplicable. *Id*. at 280.

The defendants also rely on *Emmenegger v. Bull Moose Tube Company*, 197 F.3d 929 (8th Cir. 1999). *See* Motion to Dismiss at 10. In *Bull Moose*, a former senior executive filed suit under ERISA seeking benefits under two plans provided by the company -- a severance plan and a phantom stock plan. The Court of Appeals for the Eighth Circuit held that the phantom stock plan was not a pension plan within the meaning of ERISA, but instead an exempted bonus plan.

The court in *Bull Moose* focused on several aspects of the stock plan before concluding it was an exempted bonus plan, including: (1) the stated purpose of the plan; (2) how the redemption value of the plan's shares was calculated; (3) when the shares vested; (4) what events triggered redemption of the shares. *Id.* at 931-32. The court found that the plan set up a "classic" bonus situation: "reward (higher cash value) for superior performance (higher corporate earnings)." *Id.* at 933. Additionally, after looking at both the express terms and the surrounding circumstances of the plan, the court found that the "shares" in the phantom stock plan were not systematically deferred to termination or so as to provide retirement income.[9] *Id*.

A key distinction between the plans at issue in *Bull Moose* and *Hahn*, on the one hand, and the plan in the instant case, on the other hand, is that after periods of five and three years, respectively, participants in the *Bull Moose* and *Hahn* plans could redeem all of their vested shares, whereas participants in MRG's plan could redeem only up to 40% of their vested, unredeemed shares, once every two years. Kaufman

---

[9] See also *Houston v. Aramark Corp.*, 112 Fed.Appx. 132, 136 (3rd Cir. 2004), *cert. denied*, 544 U.S. 1032 (2005) (employee stock option plan held to be beyond scope of ERISA where any deferral of payment was not systematic and merely at the election of the plan participant); *Oatway v. American International Group, Inc.*, 2002 WL 187512 at *5 (D. Del. 2002) (after examining express terms of defendant company's bonus plan, court held that stock option plan did not systematically defer compensation until the termination of employment; any such deferral was incidental and plan participants had the primary option to exercise stock option benefits during employment), *aff'd*, 325 F.3d 184 (3d Cir. 2003).

argues that a participant's inability to claim *all* of his shares places the plan within an exception to the bonus plan exclusion, under the "systematic deferral" language of 29 C.F.R. § 2510.3-2(c).  *See* Plaintiff's Response at 16-17.  The defendants, in their reply, argue that the key issue is not that Plan participants could only redeem a portion of their shares, but that by allowing *any* payment to be made during employment, the Plan must fall beyond ERISA's coverage.  *See* Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction at 6.

Viewing the evidence in a light most favorable to the non-movant, here Kaufman, the court finds this distinction between MRG's plan and those held beyond the scope of ERISA creates an issue of material fact as to whether the Plan falls under an exception to the bonus plan exclusion outlined in the Labor Regulations.  Looking at the stated purpose of the Plan, the court finds that the plan is a "bonus" plan.  Because the Plan only provides a chance to redeem 40% of vested points, and only once every 2 years, the court finds that the defendants' bonus plan systematically defers payment until the termination of employment.  Therefore, the defendants' motion for summary judgment must be denied.

### III.  CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment is **DENIED**.

**SO ORDERED**.

May 30, 2008.

_____
**A. JOE FISH
Senior United States District Judge**