UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL S. KAUFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:06-CV-2192-G |
| S & A RESTAURANT CORPORATION, ) | |
| ET AL., ) | **ECF** |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the plaintiff Michael S. Kaufman ("Kaufman" or "the plaintiff") for summary judgment. For the reasons set forth below, the motion is denied.

## I. BACKGROUND

The relevant background facts outlining this dispute have been partially set forth in this court's May 30, 2008 opinion denying the motion of the defendants, S&A Restaurant Corporation, Metromedia Steakhouses Company, L.P., Metromedia Restaurant Services, Inc., and Metromedia Company ("the defendants" or

"Metromedia") for summary judgment. *See* Memorandum Opinion and Order ("Order") (Docket Entry # 57).

In short, the plaintiff claims that he is owed $966,000 by the defendants -- compensation based on his participation in the defendants' Equity Growth Plan (the "Plan"). *See generally* Plaintiff's Motion for Summary Judgment; Order at 2-6 (explaining the origin of the Plan, Kaufman's participation in the Plan, and Kaufman's attempt to redeem his points upon termination from Metromedia). The plaintiff filed suit on November 29, 2006, asserting claims for breach of contract and denial of benefits under the Plan. *See generally* Plaintiff's First Amended Complaint ("Complaint").

### A. Valuation of the Plan Points

Kaufman served as President of Metromedia's restaurant group from September of 1993 until his termination in September of 2003. Complaint ¶ 3. During his employment, Kaufman participated in the Equity Growth Plan. *Id.* ¶¶ 13, 17. Each participating member of the Metromedia Equity Growth Plan was awarded a particular number of points, as determined by the Plan's administration committee. *Id.* ¶ 13. The value of the points was to be determined using a defined formula, with the value being closely tied to the performance of the company. *Id.* On February 6, 1997, the Plan's Administration Committee selected Kaufman to be a plan participant and awarded him 45,000 points, effective retroactively as of January 31,

1993, which became vested on October 15, 1998. Complaint ¶ 17; MRG Equity Growth Plan Points Certificate, *attached to* Complaint *as* Exhibit B. Kaufman then assigned 10,000 points to other members of the management team. Complaint ¶ 19.

The Plan, as amended in June of 2002, provided that a participant could redeem up to 40% of his or her unredeemed points once every two years. *See* Amended Plan, *attached to* Appendix of Evidence Submitted in Support of Defendants' Response to Plaintiff's Motion for Summary Judgment ("Defendants' App.") at 162-163. The Amendments simplified the valuation formula for the points, and tied the valuation to the last day of each fiscal quarter of the company. *Id.* The Amendments also addressed the authority of the Plan's administrative committee and granted the committee the "final authority to interpret and construe the terms of the Plan." *See* Defendants' App. at 165. The committee's interpretation and construction "shall be final, binding, and conclusive upon all persons." *Id.* The amended Plan did not provide participants with an appeal procedure or any method of challenging the committee's determinations. *Id.*

Kaufman received a statement from Gene Caldwell ("Caldwell"), MRG's Chief Financial Officer ("CFO") in August of 2003 which set forth a valuation of $27.60 per point as of the second quarter, and further stated that as of the second quarter, Kaufman had "35,000 equity plan points with a vesting rate of 100%." *See* Caldwell Memorandum, *attached to* Defendants' App. at 118. Under paragraph 10 of the

amended plan, "[a]ll amounts payable under the Plan shall be paid in cash in a single lump sum within ninety (90) days." Defendants' App. at 164.

In response to the plaintiff's motion for summary judgment, Metromedia disputes the $27.60 valuation of Kaufman's points, explaining that accounting errors yielded artificial gains and, as a result, inflated the value of the Plan points. *See* Brief in Support of Defendant's Response to Plaintiff's Motion for Summary Judgment ("Response") at 3; Email from Robin Chamberlain to Kaufman, Feb. 10, 2006, *attached to* Defendants' App. at 123-26. The accounting errors, according to Metromedia, were discovered during an investigation by Metromedia's new CFO, Robin Chamberlain ("Chamberlain"), in response to Kaufman's claim that his points were worth close to $1 million dollars. *See* Response at 9; Declaration of Robin Chamberlain ("Chamberlain Decl.") ¶¶ 9-12, *attached to* Defendants' App. at 258. According to Metromedia, "the Company believed that there was something wrong with the original calculation because it seemed inconsistent with the Company's poor financial performance." Response at 2. Specifically, Metromedia points to a $3.4 million dollar "non-cash book gain that resulted from artificially shifting income from one period." Response at 2, 11-13.

Metromedia asserts that there is nothing in the Plan preventing a revaluation of the points in order to arrive at a figure that accurately reflected "*operating performance and company value.*" *See* Response at 6, 15 (emphasis in original).

Moreover, Metromedia argues that it never agreed to Kaufman's valuation of the points,[1] and furthermore, that it was made clear to Kaufman soon after negotiations for his severance began that the valuation of Plan points was under review. *See* Response at 5, 16; Oral Deposition of Michael Kaufman at 31-34, *attached to* Defendants' App. *as* Exhibit 1A. Kaufman himself indicated he knew the valuation was under review in a letter to Subotnick. *See* Letter to Subotnick, *attached to* Defendants' App. at 131.

The review of the equity points lasted approximately two years,[2] and after factoring in the accounting errors, Kaufman was informed that his points were, in fact, worth $0.00. The corrections made "resulted in a Plan valuation that was an accurate depiction of the operations of the Company as of the relevant Plan Valuation Date, as defined by the Plan." Response at 13.

### B. Metromedia's Prior Motion for Summary Judgment

In denying the defendants' motion for summary judgment, this court found that there was an issue of material fact relating to whether or not the Plan at issue

---

[1] Metromedia states that, initially, the company relied on Kaufman's representation that his equity points were worth close to $1 million, though no one ever agreed that such a valuation was accurate. Response at 5.

[2] The defendants "did not expect or desire the investigation to take as long as it did" and explain that because of "other priority matters" the new CFO needed to address, the investigation was delayed. Response at 15.

was governed by the Employee Retirement Income Security Act of 1974 ("ERISA").[3]

The plaintiff now seeks summary judgment on a breach of contract theory, arguing that even if the Plan cannot definitively be classified as an ERISA plan, summary judgment is proper on a claim for breach of contract. *See* Plaintiff's Motion for Summary Judgment at 48-50. Metromedia argues that an issue of material fact exists concerning any breach of contract claim because such a claim is barred by Delaware's one-year statute of limitations. Response at 3. Additionally, Metromedia argues there was no consideration from the plaintiff to make the Plan an enforceable contract. *Id.*

To begin, the court will address the arguments on both sides concerning the issue of ERISA coverage -- the central issue addressed in the court's May 30, 2008 order. The plaintiff makes several claims for breach of contract and argues that if summary judgment cannot be awarded on his ERISA claims, he should prevail on his contract claims. *See* Motion for Summary Judgment at 48-50.

---

[3] "Viewing the evidence in a light most favorable to the non-movant, here Kaufman, the court finds this distinction between MRG's plan and those held beyond the scope of ERISA creates an issue of material fact as to whether the Plan falls under an exception to the bonus plan exclusion outlined in the Labor Regulations. Looking at the stated purpose of the Plan, the court finds that the plan is a 'bonus' plan. Because the Plan only provides a chance to redeem 40% of vested points, and only once every 2 years, the court finds that the defendants' bonus plan systematically defers payment until the termination of employment. Therefore, the defendants' motion for summary judgment must be denied." Order at 17.

## II. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is proper when the pleadings and evidence before the court show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); see also *Celotex Corporation v. Catrett*, 477 U.S. 317 (1986). The disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986). While all of the evidence must be viewed in a light most favorable to the nonmovants, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions will satisfy the nonmovants' summary judgment burden. *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002) (citing *Little v. Liquid Air Corporation*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving part[ies]." *Anderson*, 477 U.S. at 248.

The movant makes the necessary showing by informing the court of the basis of his motion and by identifying the portions of the record which reveal there are no

genuine material fact issues. *Celotex*, 477 U.S. at 323. The pleadings, depositions, admissions, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. FED. R. CIV. P. 56(c).

If the movant makes the required showing, the nonmovants must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 323-24. To carry this burden, the "opponent[s] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). Instead, the nonmovants must show that the evidence is sufficient to support a resolution of the factual issue in their favor. *Anderson*, 477 U.S. at 249. When conflicting evidence is presented, the court is not permitted to make credibility determinations regarding the evidence. See *Lindsey v. Prive Corporation*, 987 F.2d 324, 327 (5th Cir. 1993). The nonmovants cannot survive a motion for summary judgment, however, by merely resting on the allegations in their pleadings. *Isquith for and on behalf of Isquith v. Middle South Utilities, Inc.*, 847 F.2d 186, 199 (5th Cir.), *cert. denied*, 488 U.S. 926 (1988); see also *Celotex*, 477 U.S. at 324.

### B. ERISA Revisited: Addressing the Nature of the Plan

The bulk of the plaintiff's motion for summary judgment assumes the Plan is governed by ERISA. The plaintiff filed his motion for summary judgment prior to

this court's May 30, 2008 order. In his reply, however, Kaufman asks the court to reconsider its prior order and find the Plan is governed by ERISA. However, as the May 30, 2008 Order explains, an issue of material fact regarding ERISA coverage remains.

Metromedia, taking another bite at the apple, has presented a new interpretation of the Plan's point redemption policy that, theoretically, would allow for all points to be redeemed within four years. *See* Response at 18. Metromedia's interpretation of the Plan's language, while certainly creative, does not preclude a contrary interpretation, and, consequently, does not foreclose the conclusion that the plan provides for systematic deferral of income (and therefore falls under ERISA's purview). In other words, a material fact still exists regarding the nature of the Plan. Consequently, this court is unable to award summary judgment to the plaintiff on his ERISA claims, and to the extent the plaintiff moves for summary judgment on his ERISA claims, his motion is denied.

### C. Contract Claims

Alternatively, Kaufman asks the court to find the plan is a written contract that the defendants have breached. *See* Motion for Summary Judgment at 48-50. The defendants argue that any breach of contract claim is barred by the one-year statute of limitations, and furthermore that the Plan is unenforceable for lack of consideration. *See* Response at 23, 25.

1. *Statute of Limitations*

Metromedia argues that Delaware's one-year statute of limitations for employment-related benefit claims bars Kaufman's contract claims. Response at 23. 10 Del. C. § 8111 provides:

> No action for recovery upon a claim for wages, salary, or overtime for work, labor or personal services performed, or for damages (actual, compensatory or punitive, liquidated or otherwise), or for interest or penalties resulting from the failure to pay any such claim, or for any other benefits arising from such work, labor or personal services performed or in connection with any such action, shall be brought after the expiration of one year from the accruing of the cause of action on which such action is based.

The defendants argue that § 8111 applies, in lieu of § 8106's three-year general statute of limitations, because Kaufman's claims "arise from services 'which have been performed.'" Response at 24.

In *Wal-Mart Stores, Inc. v. AIG Life Insurance Company*, 860 A.2d 312, 319 (Del. 2004), the Delaware Supreme Court held that in some circumstances, equitable tolling of limitations is appropriate. Such circumstances include the doctrines of (1) fraudulent concealment; (2) inherent unknowable injury; and (3) equitable tolling. *Certainteed Corporation v. Celotex Corporation*, 2005 WL 217032, *7, (Del. Ch. Jan. 25, 2005). "Each of these doctrines permits tolling of the limitations period where the facts underlying a claim were so hidden that a reasonable plaintiff could not timely discover them." *In re Dean Witter Partnership Litigation*, 1998 WL 442456,

*5 (Del. Ch. Jul. 17, 1998). If one of these tolling exceptions apply, "the statute will begin to run only upon the discovery of facts constituting the basis of the cause of action *or* the existence of facts sufficient to put a person of ordinary intelligence and prudence on inquiry which, if pursued, would lead to the discovery [of the injury]." *Wal-Mart Stores*, 860 A.2d at 319 (emphasis in original; internal quotation marks omitted).

Kaufman argues that the inherently unknowable injury doctrine[4] applies to toll the statute of limitations for his breach of contract claims. *See* Reply at 22. Specifically, Kaufman contends that, assuming his claims "accrued" 90 days after his employment ended, the "time of discovery" rule tolls the statute of limitations for his

---

[4] In *Layton v. Allen*, 246 A.2d 794 (Del.1968), the Delaware Supreme Court recognized the inherently unknowable injury exception to the statute of limitations. In *Layton*, a doctor negligently left a surgical instrument in a patient's body. Seven years later, after the instrument was discovered during emergency surgery, the patient brought an action for medical malpractice against the surgeon and the hospital. *Id.* at 796. The defendants argued that the patient's claims were barred by the statute of limitations, which provided for a two-year limitation period accruing at the date of the surgery. *Id.* The court in *Layton* held that, under the particular circumstances presented there, the statute of limitations was tolled until the patient discovered the injury. *Id*. at 798.

*Layton's* rationale has since been applied to a case involving accounting malpractice where the taxpayer did not know he suffered an injury until the Internal Revenue Service asserted a claim, *Isaacson, Stolper & Company v. Artisan's Savings Bank*, 330 A.2d 130, 133 (Del.1974). By analogy, the rationale applies in the instant case. Until Kaufman was told definitely that his points were considered worthless by the defendants, and in light of his ongoing dialogue with the defendants, Kaufman's delay in filing a lawsuit to force payment is excusable. The defendants' statute of limitations argument is unpersuasive.

claims until February of 2006 when he learned the outcome of Chamberlain's investigation. *Id.* The court agrees. Assuming, without deciding, that the one-year statute of limitations applies, the court concludes that Kaufman had reason to believe that Metromedia would compensate him for the value of his points, whatever that value was determined to be. *See* Reply at 22-23. It would be unfair to allow the defendants to, in effect, stall for two years during Chamberlain's investigation, and then argue that Kaufman's claim is time-barred. The court will not penalize the plaintiff for attempting to resolve his claim outside the courtroom.

2. *Kaufman's Breach of Contract Claim*

It is Kaufman's argument that, even if not governed by ERISA, the Plan was a valid, enforceable contract, and that the defendants breached the agreement by failing to pay him 90 days after termination. *See* Motion for Summary Judgment at 48-50. The Plan, as amended in 2002, provides that "[a]ll *amounts payable* under the Plan shall be paid in cash in a single lump sum within ninety (90) days," unless the Committee directs payment to be made ratably. *See* Defendants' App. at 164 (emphasis added). Kaufman argues that any change in valuation is irrelevant and that the $27.60 value Caldwell determined is valid, based on sound accounting principles, and should control under the Plan's language. *See* Motion for Summary Judgment at 49. Kaufman contends that Metromedia had 90 days to determine whether or not Caldwell's valuation was accurate. *Id.* However, viewing the evidence

in light most favorable to the non-movants, under the terms of the Plan, and considering the adjustments made by the defendants, the court cannot say that there was necessarily an "amount due" under the Plan. Consequently, Kaufman's motion for summary judgment is denied.

The defendants have presented other arguments to defeat Kaufman's contract claim. Though it has already been determined that an issue of material fact precludes summary judgment on the plaintiff's breach of contract claim, the court will address the defendants' arguments in the interest of completeness.

The elements of a breach of contract claim under Delaware law are: (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) damage to the plaintiff as a result of that breach. *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 140 (Del. Ch. 2003). The defendants argue that summary judgment is improper on several grounds, including failure of consideration and lack of damage to Kaufman. Response at 25-28.

The defendants argue that, under *Kerbs v. California Eastern Airways*, 90 A.2d 652, 656 (Del. 1952), Kaufman's breach of contract claim fails for lack of consideration. Response at 25-26. In *Kerbs*, the Delaware Supreme Court held that stock-option plan was not enforceable against the defendant company due to lack of consideration. 90 A.2d at 656. Specifically, the court found that "the stock option plan . . . is deficient because it is not reasonably calculated to insure that the

defendant will receive the contemplated benefits." *Id.* Metromedia argues that, because at the inception of the Plan there was no way to ensure the company would receive the contemplated consideration, there is no valid contract. Response at 26.

However, the plaintiff successfully distinguishes *Kerbs* from the facts of the instant case. *See* Reply at 23-24, To the extent there is a contract between the parties, the court finds that it was supported by adequate consideration. The Plan, unlike the stock option plan in *Kerbs*, requires that the points be vested and could not be exercised at any time. Additionally, *Kerbs* has been limited subsequently by *Beard v. Elster*, 160 A.2d 731 (Del. 1960), where the Delaware Supreme Court explained that using the term "consideration" in *Kerbs* had been "ill-advised," as consideration "is regarded . . . by some as a measurable *quid pro quo*." *Id.* at 736. The court clarified what it meant by "consideration" and set forth the more lenient requirement that "there must be some reasonable assurance in the plan, or the circumstances of the particular case, which can reasonably be expected to make the corporation receive the contemplated benefit." *Id.* The court finds that Metromedia's Equity Growth Plan was structured in such a way so as to provide a reasonable expectation of a benefit to the defendants. Though the parties dispute whether or not the company actually received any benefit from the Plan, the court finds adequate consideration to make the Plan an enforceable contract. In one sense, this is again an argument relating to the *value* of the points, a question to be decided by the factfinder.

Turning to the defendants' damages arguments, the court is unpersuaded by the argument that Kaufman has not suffered any damages. Kaufman alleges he suffered $966,000 in damages, and the defendants' theory that, *see* Response at 27-28, their delay in completing the investigation into the Plan's value afforded Kaufman an opportunity to receive more compensation misconstrues the situation. The defendants have not presented sufficient evidence to show Kaufman's entitlement to value for his redeemed points was somehow dependent on any other event.

### III. CONCLUSION

For the reasons stated above, the plaintiff's motion for summary judgment is **DENIED**.

**SO ORDERED**.

August 19, 2008.

*[signature: C. Joe Fish]*

**A. JOE FISH**
**Senior United States District Judge**